FILED
2009 FEB 24 PM 3: 23

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

WILLIAM H. HUDGENS,

           Plaintiff,

    v.

JAMES DURRENCE, Individually and in
his capacity as a Correction Officer of the
Georgia Department of Corrections,

           Defendant.

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.: CV207-110

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff William Hudgens ("Plaintiff"), who was formerly incarcerated at Wayne State Prison in Odum, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983. Defendant James Durrence ("Defendant") filed a Motion for Summary Judgment. Plaintiff filed a Response, to which Defendant replied. For the reasons which follow, Defendant's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that he received chemical burns on his left hand when he tried to unclog a toilet while he was working an outside detail, and the chemical agent he used splashed onto his hand. Plaintiff contends Defendant told Deputy Kenneth Poppell with the Wayne County Sheriff's Office to return Plaintiff to the prison. Plaintiff also contends he received medical treatment at the prison, but he should have been transported

immediately to the emergency room. Plaintiff alleges he did not get appropriate medical care, in violation of his substantive due process rights and his Eighth Amendment right to be free from cruel and unusual punishment.

Defendant, then Chief of Security at Wayne State Prison, alleges he is entitled to summary judgment in his official capacity. Defendant also alleges Plaintiff does not set forth facts indicating that his right to due process was violated and that Plaintiff's allegations are actually Eighth Amendment claims. Defendant further alleges Plaintiff fails to state an Eighth Amendment claim against him. Finally, Defendant alleges he is entitled to qualified immunity.

## STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

### I.     Official Capacity Claims

Defendant asserts that Plaintiff's monetary damages claims against him in his official capacity are barred by the Eleventh Amendment. A lawsuit against a prison official in his official capacity is no different from a suit against the government itself; such a defendant is immune. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). As Plaintiff's monetary damages claims against Defendant in his official capacity would be claims against the State of Georgia, this portion of Defendant's Motion should be **granted**.

## II.    Substantive Due Process Claim

Defendant contends Plaintiff "vaguely refers to a substantive due process violation" in his Complaint "'for conspiring for the purpose of impeding and hindering the due court of justice with the intent to deny and deprive Plaintiff of due process and equal protection of laws.'" (Doc. No. 26-2, p. 15) (quoting Doc. No. 1, p. 1). Defendant avers that Plaintiff's cause of action is premised upon an alleged violation of his Eighth Amendment rights, not the substantive due process clause of the Fourteenth Amendment. Defendant asserts Plaintiff cannot claim he is entitled to any broader protection of a right than that afforded by the Eighth Amendment.

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." The United States Supreme Court has recognized that the due process clause "protects certain fundamental liberty interests from deprivation by the government", and "[o]nly fundamental rights and liberties . . . qualify for such protection." Chavez v. Martinez, 538 U.S. 760, 775 (2003) (internal punctuation and citation omitted). The Supreme Court has "expressed [its] reluctance to expand the doctrine of substantive due process . . . in large part because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended[.]" Id. (internal citations and punctuation omitted). A "careful description of the asserted fundamental liberty interest" is required "for the purposes of substantive due process analysis; vague generalities, such as 'the right not to be talked to,' will not suffice. Id. at 775-76.

In his Complaint, Plaintiff states he seeks damages against Defendant "for violating his right to substantive due process; for conspiring for the purpose of impeding

and hindering the due course of justice with intent to deny and deprive Plaintiff of due process and the equal protection of laws[.]" (Doc. No. 1, p. 1). This is the entirety of the legal basis of Plaintiff's substantive due process claim, which amounts to nothing more than a "vague generalit[y]". See Chavez, 538 U.S. at 776. This portion of Defendant's Motion should be **granted.**

## III. Deliberate Indifference Claim

Defendant contends he did not act with deliberate indifference to Plaintiff's serious medical needs. Defendant alleges Plaintiff cannot show that he had subjective knowledge of serious harm to Plaintiff and disregarded that risk by conduct that is more than negligence. Defendant also alleges he was informed only that Plaintiff had poured a chemical on his hand and not the severity of the injury, the manner in which the injury occurred, or Plaintiff's condition. Defendant further alleges that, based on the information known to him, it was reasonable for him to believe that Plaintiff could be properly assessed at the Wayne State Prison infirmary, where medical treatment could be provided or arrangements for additional medical care could be made. (Doc. No. 26-2, p. 19). Defendant asserts he arranged to have Plaintiff's access and transport to the infirmary expedited and that Plaintiff received medical treatment within 30 minutes of his injury and within 8 minutes of leaving the Sheriff's Office where his work detail was. Defendant avers Plaintiff cannot argue with the adequacy of the treatment he received at Wayne State Prison. Defendant contends Plaintiff's burn was washed, antibiotic treatment was applied, and his hand was bandaged. Defendant asserts Plaintiff received this exact treatment when he went to the Wayne County Hospital and that both of these treatments were the proper treatment for Plaintiff's injury. Defendant alleges

that, even if he were subjectively aware that 8 minutes would cause Plaintiff to suffer serious medical harm and intentionally disregarded that risk by having Plaintiff return to Wayne State Prison for evaluation, Plaintiff cannot establish this delay exacerbated his medical condition.

Plaintiff contends he underwent four (4) surgeries, "each of which was necessitated by the burn," and were not provided by Defendant, who controlled his medical care while he was in custody. (Doc. No. 44, p. 2). Plaintiff asserts that Defendant instructed Poppell to return Plaintiff to Wayne State Prison, despite Defendant being advised that Plaintiff suffered a burn, that Plaintiff needed to go to the hospital, and that Poppell offered to take Plaintiff to the hospital. Plaintiff asserts Defendant refused to take him to the emergency room after he returned to the prison, which contributed to the permanency of his injury. Plaintiff also asserts that the Court is to accept his version of events, which reveals that Poppell told Defendant that Plaintiff needed to go to the hospital. Plaintiff further asserts that, after Defendant refused to provide him with emergency care, he "then failed to provide [Plaintiff] with any kind of expert burn treatment." (Id. at 7).

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of

the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. Harris, 941 F.2d at 1505.

"The meaning of 'more than gross negligence' is not self-evident[.]" Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in

treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Det. Center Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). For example, the Eleventh Circuit has determined "that a doctor's failure to administer stronger medication . . . pending the arrival of [an] ambulance . . . [was] a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." Id. (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir.1995)). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

In his Affidavit, Defendant contends that Poppell called him on the date of Plaintiff's injury and informed him that Plaintiff poured a chemical on his hand, but Poppell did not describe the injury or Plaintiff's condition, provide any information about the severity or extent of the injury, or the manner in which Plaintiff sustained the injury. Defendant alleges that Poppell asked him what the protocol was—whether Plaintiff should be taken to the hospital or returned to Wayne State Prison. Defendant also alleges Poppell did not tell him he believed Plaintiff needed to go to the emergency room, but, if Poppell had, he would have asked Poppell to take Plaintiff to the emergency room. Defendant asserts that, as Chief of Security at Wayne State Prison, it is not his responsibility to make medical decisions regarding medical care. Rather, it is for the medical personnel to determine the medical care for inmates. Defendant

contends that he would have arranged for Plaintiff to obtain additional medical care if medical staff informed him such care was required. Defendant asserts that, normally, when an inmate returns to Wayne State Prison after working an outside detail, he is brought to the back gate where his identification is checked, he is signed in, is taken to the "shakedown" shack for a strip search, passes through a metal detector, is escorted to the back door, and then is permitted to return to his dorm. However, Defendant asserts, he spoke to the officer who answered the phone on Sergeant Horton's desk and told the officer a trustee was returning from the Wayne County Sheriff's Department who needed to be taken to the medical department as quickly as possible. Defendant contends he saw Plaintiff in the infirmary and asked him how he was doing; Plaintiff said he was "hurting". Defendant contends that he asked the nurse if Plaintiff was going to be okay, and the nurse told him Plaintiff was going to be fine. Defendant alleges he did not tell the nurse how to provide treatment to Plaintiff, nor did the nurse tell him that Plaintiff needed to go to the emergency room. (Def.'s Ex. C).

Kevin Thurman ("Thurman"), a licensed practical nurse who was assigned to work in the infirmary at Wayne State Prison on the date of Plaintiff's injury, avers that Plaintiff's left hand was wrapped when he arrived at the prison infirmary. Thurman states he removed the wrapping and examined Plaintiff's hand, which was reddish in color. Thurman also states he washed Plaintiff's left hand with soap and water for approximately 15 minutes in an effort to remove any residual chemical, applied Silvadene ointment, and wrapped a "telfa" pad on his left hand. (Def.'s Ex. F, ¶ 6). Thurman asserts he instructed Plaintiff to increase his fluid intake, avoid breaking the blisters, to take Tylenol every 4 to 6 hours for pain, and to return to medical in the

morning. Thurman also asserts he did not believe Plaintiff's injury required emergency care at the local hospital, but, if he had, he would have arranged to have Plaintiff transported to the hospital. Thurman further asserts he provided follow-up care for Plaintiff's injury on several occasions, including evaluating and washing the wound, applying Silvadene cream, and changing the dressings. (Def.'s Ex. F).

Kenneth Poppell, a captain with the Wayne County Sheriff's Department, gave deposition testimony that Plaintiff came into his office around 3:35p.m. on the date of the accident with his hand wrapped up in paper towels and told Poppell he spilled some chemicals on his hand. Though Poppell did not look at Plaintiff's hand, he "knew that [Plaintiff] needed medical attention", which the Sheriff's Office could not offer. (Def.'s Ex. D, p. 9). However, Poppell did not deem Plaintiff's injury to be a life-threatening injury which required a visit to the emergency room based on Plaintiff's actions and what he told Poppell. Poppell asserts he called Defendant and told him Plaintiff spilled some chemicals on his hand and that he (Poppell) had not seen what Plaintiff's hand looked like. Poppell testified that the Sheriff's Office and Wayne State Prison sign an agreement every year, and one of rules in this agreement is that, if someone on a work detail at the Sheriff's Office needs medical attention, the Sheriff's Office is to notify the prison immediately. Poppell also testified that Defendant told him to return Plaintiff to Wayne State Prison for an assessment. Poppell stated Plaintiff was sitting in his office, holding his hand while in obvious discomfort. (Id. at 12).

Defendant submitted copies of Plaintiff's medical records. The Nursing Assessment for Skin Wounds/Burns form indicates Plaintiff arrived in Wayne State Prison's medical unit at 4:00p.m. with his hand wrapped and that his hand was washed

with cold water and soap for ten (10) minutes. Thurman noted Plaintiff was advised to increase his fluid intake, not to break any blisters, and to take Tylenol every 4 to 6 hours for pain. Thurman also noted Silvadene cream was applied to Plaintiff's hand (Def.'s Ex. I, p. 1), his hand was wrapped, and he was advised to return to medical in the morning. (Def.'s Ex. G, p. 3).

Plaintiff was taken to the Wayne Memorial Hospital that evening and was triaged at 6:38 p.m. as an "urgent" case. (Def.'s Ex. I, p. 1). Plaintiff's wound was cleaned, Silvadene ointment was applied, and dressing was applied. Plaintiff was seen by a doctor at 7:20 p.m., and the doctor opined Plaintiff had second degree burns to the back of his left hand. (Id. at 3). Plaintiff was given some stronger pain medication and returned to Wayne State Prison.

The next morning, Plaintiff was seen in the medical unit at Wayne State Prison. He reported his pain as being a 2 on a scale of 0-10. Plaintiff's hand was cleaned with soap and water "using aseptic technique", Silvadene cream was applied, and Plaintiff's hand was covered with tefla pads and gauze. (Def.'s Ex. G, p. 4). The nurse did not observe any redness, blisters, or infection. Plaintiff was advised to notify medical if he had any drainage, increase in pain or temperature, or warmth at the site of his injury.

On February 16, 17, and 18, 2007, the dressings were removed, Plaintiff's hand was cleaned with soap and water, Silvadene cream was applied, and his hand was re-covered with a tefla pad and gauze. (Id. at 6-7). Plaintiff reported having no drainage and was given a prescription for Keflex on February 24, 2007. (Id. at 8).

Plaintiff went back to Wayne Memorial Hospital two (2) days later complaining of increased pain, and it was noted that Plaintiff had a black crust on the back of his left

hand and two (2) fingers. It was also noted Plaintiff presented with "erythematous, tender, warm c/w CELLULITIS". (Def.'s Ex. I, p. 9). Plaintiff was diagnosed with cellulitis and second degree burns. (Id.)

Plaintiff returned to medical at Wayne State Prison on February 27, 2007, and complained of increased pain. The nurse noted Plaintiff's hand looked swollen, and the skin on his hand was black, blue, grey, and pink. After speaking with the prison doctor, Dr. Music, Plaintiff was referred for a general surgical consult. Dr. Kennedy, the consulting physician, found that Plaintiff had first and second degree chemical burns on his left hand, with decreased range of motion. Dr. Kennedy recommended Plaintiff have Silvadene cream applied to the burn after it was cleaned. (Def.'s Ex. G, pp. 9-10).

A week later, Dr. Music examined Plaintiff on a follow-up basis. Three (3) days later, Plaintiff was seen in medical; his hand was washed with soap and water, Silvadene cream was applied, and his hand was wrapped in a tefla pad and gauze. Dr. Kennedy examined Plaintiff that same day. Dr. Kennedy noted Plaintiff's burns were "healing well", he still had some swelling, his range of motion was a little better but still decreased, and he had some pain. (Id. at 13). Plaintiff was referred to an orthopedic surgeon for evaluation.

Plaintiff's dressing was removed and his wound washed with soap and water on March 7, 2007. The nurse applied Silvadene cream and wrapped Plaintiff's hand in a tefla pad and gauze. The nurse did not observe any drainage or infection, but the burned skin was starting to peel off of Plaintiff's hand. (Id. at 15). A week later, Plaintiff was seen by Nurse Thurman, who noted Plaintiff had a scab over the top of his left hand, a slightly yellow discharge, and swelling. Plaintiff was prescribed Percogesic, and

his dressing was changed. Plaintiff saw Dr. Music the next day, and Dr. Music noted Plaintiff's burn was healing. On March 20 and 21, 2007, Plaintiff went to medical for dressing changes in the mornings, and Silvadene cream and new dressings were applied. Plaintiff did not show up to medical on these two (2) days for his evening dressing change. (Id. at 20).[1]

Dr. Hein, an orthopedic surgeon, evaluated Plaintiff on April 11, 2007. Dr. Hein noted Plaintiff's non-dominant hand was swollen from non-use, and recommended Plaintiff have "OT" and a skin evaluation. (Id. at 17).

Defendant submitted a letter from Dr. Walter Ingram, the Medical Director at the Grady Hospital Burn Unit in Atlanta, Georgia. Dr. Ingram noted that the "most important early intervention in treating chemical burns is washing off the involved chemical." (Def.'s Ex. H, p. 1). Dr. Ingram also noted, after reviewing Plaintiff's medical records from Wayne State Prison and his post-release treatment center, that Plaintiff's burn was washed off at the scene of the accident and again at Wayne State Prison infirmary. Dr. Ingram opined that "[t]here is no other treatment to mitigate the depth of the burn. The emergency room treatment was almost the same treatment as the infirmary (except that he was given more potent pain medication at the emergency room)." (Id.) Dr. Ingram also opined that taking Plaintiff "to the prison infirmary for treatment before taking him to the . . . emergency room did not adversely effect the final outcome of his hand burn." (Id. at 2).

Plaintiff submitted the Affidavit, as supplemented, of Dr. William Hitt, a licensed doctor in the State of Georgia. Dr. Hitt states, in relevant part, that skin which is

[1] There is another form for Plaintiff's visit in the medical unit of Wayne State Prison, but it is undated. This form appears to have been completed some time in March 2007, as it is noted that Plaintiff's orthopedic consult had already been scheduled. (Def.'s Ex. G, p. 21).

exposed to sulfuric acid should be "immediately" flushed with large amounts or a heavy flow of water for 15 to 20 minutes. (Doc. No. 46-2, p. 2). Dr. Hitt also states that the non-blistered portion of the skin "may be coated with an antibiotic cream like Silvadene or Neosporin" and that a sterile, light bandage can be applied. (Id.). Dr. Hitt further states that the person should be taken to a doctor "or other knowledgeable person such as a nurse as soon as possible." (Id.). Dr. Hitt also states the person should be provided with emergency medical treatment if the burn penetrated through the first layer of skin and covers an area more than 3 inches in diameter. Dr. Hitt opined that Plaintiff had a third degree chemical burn which was larger than 3 inches in diameter, that the area should have been "thoroughly flushed with cool running water", and that Plaintiff should have been taken immediately to a medical facility for examination and treatment. (Id.). Dr. Hitt continued by opining that, "[w]hile it is impossible to say whether the failure of immediate transportation to an emergency room resulted in an increased permanent disability and/or scarring . . ., the failure to so transport prevented the possibility of improving the final outcome." (Id.).

Plaintiff and Defendant submitted a copy of the deposition testimony transcript of Dr. Claus Brandigi, a burn surgery specialist who treated Plaintiff after his release from the custody of the Georgia Department of Corrections in April 2007.[2] Dr. Brandigi performed two (2) skin grafts on Plaintiff, which were "necessitated by the burn" Plaintiff suffered on February 14, 2007. (Def.'s Ex. J, p. 15; Doc. No. 40, p. 15). On examination by Defendant's counsel, Dr. Brandigi stated he had not reviewed any of

---

[2] Most of Dr. Brandigi's deposition testimony and all of the attached exhibits relate to the procedures he performed on Plaintiff after his release from prison. Thus, this evidence is not germane to the issue before this Court—whether Defendant was deliberately indifferent to Plaintiff's serious medical needs on the date of Plaintiff's injury.

Plaintiff's medical records until May 10, 2007, and he had no knowledge of the treatment Plaintiff received during that time. (Id. at 22-24).

The transcript of Plaintiff's deposition testimony reveals that he "immediately . . . went to the sink" after the chemical splashed on his hand and "started putting water" on his hand. (Def.'s Ex. A, p. 36, 61). Although soap was available in the bathroom, Plaintiff stated he only put cold water on his hand for about five (5) minutes. Plaintiff then wet a couple of paper towels and wrapped them around his hand and went to Poppell's office. Plaintiff said Poppell or another individual, Chief Hand, said Plaintiff needed to go to the emergency room. Plaintiff stated Poppell told him the protocol was to call Wayne State Prison and that they would try to take him to the hospital. (Id. at 65). Plaintiff also stated Poppell in fact called the prison and spoke to Defendant, telling him that Plaintiff burned his hand and "needed to go to the hospital." (Id. at 66). Instead, Plaintiff testified that Poppell told him he was to go back to Wayne State Prison. Plaintiff testified he was taken to Wayne State Prison, and he bypassed the "shakedown shack" and went inside. (Id. at 70). Plaintiff testified that he met Defendant, who said he needed to look at his hand, and took him "straight to medical[.]" (Id. at 72). According to Plaintiff, Defendant told the nurse to put some salve on Plaintiff's hand, wrap it up, and send him back to the dorm with some Tylenol. The nurse stated that Plaintiff needed to go to the emergency room because his wound needed to be cleaned, and there was nothing at the prison with which to clean his burn. (Id. at 74). The nurse put some salve on Plaintiff's burn and wrapped it up, and Plaintiff went back to his dorm. Plaintiff was taken to Wayne Memorial Hospital later that day, and he was first seen by a triage nurse who took his vital signs. The emergency room

nurse treated his wounds by trying to clean it, and the nurse put some "white cream" on his wound and wrapped it again. (Id. at 81). According to Plaintiff, the emergency room doctor told him he needed to see a specialist as soon as possible. Plaintiff stated that, for the next two (2) months he was incarcerated, he continued getting medication put on his wound, even though some days officers could not take him to medical because they were busy or because he would miss going to medical. Plaintiff stated he filed a grievance while he still was imprisoned due to the failure to give him "proper medical attention" because Defendant did not take him to the emergency room immediately and the prison did not "have the right medicine" to stop the burning. (Id. at 92, 95, 143). Plaintiff also thought his hand should have been scrubbed the day he received the burns. (Id. at 119-20). However, Plaintiff testified that he received medical care at Wayne State Prison some 15 minutes after he left the Sheriff's Department, even if it was not the "appropriate medical care [he] felt [he] needed[.]" (Id. at 143). According to Plaintiff, he should have been taken to the emergency room immediately, and then transported to the Augusta Burn Center if the emergency room could not do anything for his burn so he could see  someone who specializes in burns. (Id. at 146).

The evidence before the Court indicates there are no genuine issues of material fact in existence.  By Plaintiff's own admissions, he put cold water on his hand *immediately* after he splashed the chemical on his hand for about 5 minutes, and he received medical treatment at Wayne State Prison less than 30 minutes after going to Poppell's office at the Sheriff's Department; Plaintiff merely disagrees with the *kind* of medical treatment he received.  The treatment Plaintiff received at Wayne State Prison is exactly the same treatment he received at the emergency room less than 3 hours

later. Plaintiff was seen by prison medical staff no fewer than 14 times in the two months he remained in prison, and Plaintiff also was seen by two consultant physicians[3] on three (3) occasions during the remainder of his incarceration. Additionally, Plaintiff was taken to the emergency room three (3) hours and then two (2) weeks after he burned his hand. Further, Plaintiff's expert, Dr. Hitt, stated in his Affidavit that an area contacting acid should be flushed with a lot of water for 15 to 20 minutes, the area should have an antibiotic ointment and sterile bandages applied, and that Plaintiff should have been taken to a medical facility for examination and treatment. This is what the objective evidence shows: Plaintiff's hand was rinsed with soap and water for at least 10 minutes[4], and Silvadene cream and sterile bandages were applied to Plaintiff's injury by staff at the prison's medical facility. The record is bereft of any evidence that the failure to take Plaintiff to the emergency room rather than to the prison resulted in any further damage, and, in fact, Dr. Hitt states "it is impossible to say" whether that is the case. (Doc. No. 46-2, p. 2). It is abundantly clear that Plaintiff disagrees with the quality of care he received. Such a position is a woefully inadequate basis to state a claim for the violation of Plaintiff's constitutional right to be free from cruel and unusual punishment. Plaintiff has not created a genuine issue of material fact as to whether Defendant had a subjective awareness that not taking Plaintiff to the emergency room rather than to Wayne State Prison's infirmary would exacerbate Plaintiff's injury and that Plaintiff's injury in fact was exacerbated by Defendant directing him to the prison's infirmary rather than to the emergency room for Plaintiff's initial

---

[3] Contrary to Plaintiff's assertion during his deposition, the emergency room doctor did not recommend he see a consultant until two (2) weeks after he burned his hand. (Def.'s Ex. I).

[4] Additionally, Plaintiff testified during his deposition that he ran water over his burned hand for at least 5 minutes in the immediate aftermath of his injury.

medical care. The evidence, construed in the light most favorable to Plaintiff, creates no genuine issue of material fact. As Defendant is entitled to judgment as a matter of law, this portion of Defendant's Motion should also be **granted**.

It is unnecessary to address Defendant's assertion that he is entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion for Summary Judgment be **GRANTED**.

So **REPORTED AND RECOMMENDED**, this _24th_ day of February, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)