# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| WILLIAM H. HUDGENS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| JAMES DURRENCE, individually and in his capacity as a Correction Officer of the Georgia Department of Corrections, | : : : | |
| Defendant. | : | No. CV207-110 |

**ORDER**

Plaintiff William H. Hudgens filed the above-captioned case against Defendant James Durrence, individually and in his official capacity as a corrections officer for the Georgia Department of Corrections, asserting a claim for denial of essential medical care under 42 U.S.C. § 1983.[1]

---

[1] In his original complaint, Plaintiff also named Kenneth Poppell, individually and in his capacity as a Wayne County Deputy Sheriff, as a defendant. See Complaint, Doc. No. 1. However, after the complaint was filed, all parties stipulated to the dismissal of Poppell with prejudice. See Stipulation of Dismissal, Doc. No. 24. This stipulation was approved by the Court in an order dated April 30, 2008. See Order Approving Stipulation of Dismissal, Doc. No. 25. Therefore, the only remaining defendant in this action is Mr. Durrence, who is being sued both in his individual capacity and his official capacity as a corrections officer.

Presently before the Court is Defendant's motion for summary judgment. On February 24, 2009, Magistrate Judge James E. Graham issued a Report and Recommendation granting Defendant's motion. Doc. No. 66. The deadline for filing objections to the Report and Recommendation was set for March 16, 2009. Plaintiff failed to file any objections prior to the deadline and, in fact, has not filed any objections as of the date of this Order. For the reasons set forth below, the Magistrate Judge's Report and Recommendation is **AFFIRMED**.

**BACKGROUND**

At all times relevant to this action, Plaintiff William Hudgens was incarcerated as an inmate at Wayne State Prison (hereinafter "WSP") in Odum, Georgia. Defendant James Durrence is the Chief of Security for WSP. As Chief of Security, Defendant oversees all aspects of security at the prison and assists in ensuring that the prison runs properly by established policies. During his incarceration at WSP, Plaintiff achieved trustee status. Inmates who achieve this status can be assigned to jobs outside of the prison. As a trustee, Plaintiff was assigned to work at the Wayne County Sheriff's Office in Jesup, Georgia, where he worked five to

seven days per week.  Plaintiff was transported to and from his job at the Sheriff's office by Wayne County Sheriff's deputies, who would pick him up from WSP in the morning and return him to WSP in the evening.  While at the Sheriff's office, Plaintiff was supervised by Kenneth Poppell, a Captain with the Sheriff's Department.

On February 14, 2007, at around 3:00 p.m., Plaintiff was working at the Sheriff's office when he was told that a toilet in the restroom was clogged.  When a plunger would not remove the clog, Plaintiff went to a supply closet where he obtained a "Drano" like chemical.  Plaintiff failed to read the instructions printed on the label of the bottle before he used it.  Plaintiff then returned to the restroom with the chemical, leaned over the toilet, and began to pour the chemical into the toilet bowl.  To avoid the odor, Plaintiff turned his head as he poured.  While pouring, some of the chemical splashed onto the back of Plaintiff's left hand.  Plaintiff immediately ran to the sink in the bathroom and washed his left hand with water.  According to Plaintiff, he ran water over the affected area for a "few minutes," and then wrapped his hand with wet paper towels.  He then returned to

the trustee's room where he spoke with another inmate for a few minutes.

At 3:35 p.m., Plaintiff went to Captain Poppell's office and told Poppell that he had poured chemical on his hand while trying to clean the toilet. Plaintiff claims that he then lifted the paper towels and that Poppell looked at Plaintiff's injury.[2] Poppell then called WSP and asked to speak with Sergeant Horton, who was in charge of monitoring outside work details. Because Sergeant Horton was unavailable at this time, the call was transferred to Defendant Durrence. Although there is some dispute as to the specifics of the telephone conversation between Poppell and Defendant, it is undisputed that Poppell told Defendant that Plaintiff poured a cleaning chemical on his hand.[3]

---

[2] While Poppell testified in his deposition that he did not look at Plaintiff's hand, this dispute is not material to the outcome of this motion.

[3] According to Plaintiff, Poppell told Defendant that Plaintiff had burned his hand that he needed to go to the hospital. Both Defendant and Poppell, in their depositions, deny this. Although this fact is in dispute, it is not material to this motion. Even if the Court accepted Plaintiff's version of events and Poppell did, in fact, tell Defendant that Plaintiff needed to go to the hospital, this would not turn Defendant's failure to immediately transport Plaintiff to the hospital into a constitutional violation, as discussed below.

-4-

It is also undisputed that Poppell asked Defendant what the protocol was, specifically, whether he should have Hudgens taken to the hospital or returned to WSP. Although Plaintiff disputes it, Poppell testified in his deposition that, although he thought Plaintiff needed some sort of medical attention, Poppell did not consider Plaintiff's injury life-threatening, nor did he believe that Plaintiff's condition was such that he needed to be treated in the emergency room. Poppell testified that he based this belief on what Plaintiff told him as well as Plaintiff's mannerisms at that particular time.

After Poppell apprised him of the situation, Defendant told Poppell to return Plaintiff to WSP, where he would be assessed by the medical department and provided medical attention, if needed. At that time, Wayne County Sheriff's Deputy Josh Parks was called to transport Plaintiff back to WSP. Plaintiff left the Sheriff's office at 3:40 p.m., and arrived at WSP eight minutes later, at 3:48 p.m., approximately twenty-five minutes from the time of his injury.

After Defendant ended his phone call with Poppell, he called Sergeant Horton's desk and advised the officer who answered the phone that a trustee was returning to WSP from

the Sheriff's office and needed to be taken to medical as quickly as possible. Normally, when an inmate is returned to WSP from an outside work detail, they are brought to a back gate where each inmate has his identification verified, signs in, and is taken to a "shakedown" shack where a strip-search is performed. Each inmate is also taken through a metal detector before he is permitted to return to his dorm. It is undisputed that when Plaintiff arrived at WSP after sustaining his injury, normal procedures were not followed in that Plaintiff was allowed to bypass the "shakedown shack" so that he could enter the prison faster.

It is undisputed that Plaintiff was taken immediately to the prison infirmary upon arriving at WSP, where he began receiving medical treatment within fifteen minutes of leaving the Sheriff's office. It is also undisputed that at the infirmary, nurse Kevin Thurman examined Plaintiff's injury, washed the burn with soap and water for fifteen minutes to remove any remaining chemical, applied Silvadene cream, and bandaged Plaintiff's hand. After treating Plaintiff, nurse Thurman then called Dr. Leslie Music, the on-call physician, and left a message to arrange for a follow-up medical evaluation of Plaintiff's hand.

A few hours later, after Plaintiff was returned to his dorm, he complained to the second shift supervisor that his hand was in pain. He was then transported to Wayne Memorial Hospital. Upon arrival at the emergency room, the triage nurse assessed the Plaintiff's condition as "urgent," as opposed to "emergent." Plaintiff was triaged at 6:38 p.m., approximately three hours after he sustained his injury. However, Plaintiff was not treated by hospital personnel until 7:20 p.m., forty-five minutes after arriving at the hospital. Importantly, it is undisputed that when Plaintiff was finally treated at the hospital, the same treatment that was provided to Plaintiff at the prison infirmary was repeated -- the wound was cleaned, Silvadene cream was applied, and the wound was bandaged.

After being treated at the hospital, Plaintiff was returned to WSP. Plaintiff continued to receive care for his injury until his release from WSP on April 12, 2007. Specifically, the uncontroverted evidence shows that Plaintiff's wound was assessed, cleaned, Silvadene cream applied, and bandaged at WSP's infirmary on February 15, 16, 17, 18, 24, 27, March 5, 7, 8, 14, 15, 20, and 21. The evidence also shows that Plaintiff was evaluated by Dr. Music

on February 16, March 8, and March 15, and was transported to Wayne Memorial Hospital for a follow-up on February 26. Further, the evidence shows that Plaintiff was seen by a general surgeon, Dr. Donald Kennedy, on February 27, March 2, and March 5, and was seen by an orthopedist, Dr. Hein, on April 11, 2007.

Plaintiff was released from custody on April 12, 2007. After his release, Plaintiff sought medical treatment for his injury from Dr. Claus Brandigi. Importantly, Dr. Brandigi, in his deposition, testified that he has no information, knowledge, or opinions regarding the treatment provided to Plaintiff at any time before May 10, 2007, the date he first saw Plaintiff in his office, including the treatment provided on the date of the incident. Nonetheless, Dr. Brandigi performed several surgeries on Plaintiff's hand starting in May 2007. Nowhere in the record, however, does Dr. Brandigi indicate that these surgeries were in any way necessitated by a delay in treatment or improper treatment while Plaintiff was incarcerated at WSP.

In his deposition, Plaintiff testified that, as a result of his injury, he is unable to lift heavy objects and cannot use his left hand. He also testified that, as a result of the

alleged exasperation of his injury caused by the alleged delay in medical treatment, he has been unable to work at all since his release from WSP.  Interestingly, however, Defendant has submitted as evidence a surveillance video, filed with the Court as an attachment to Defendant's motion for summary judgment, which shows Plaintiff working at a construction job, where he lifted saw horses, boxes, and scaffolding with his left hand, on May 22, 2008.  Defendant also submitted as evidence another video which shows Plaintiff using his left hand to secure a ladder to the top of a truck on May 22, 2008. Plaintiff fails to contest this evidence, instead only saying that it is irrelevant to the issues before the Court.  The Court agrees that this evidence is not material to the resolution of the instant motion.

Plaintiff claims that Defendant, who controlled Plaintiff's medical care on the date he sustained his injury, refused to transport Plaintiff to the hospital despite being advised by Plaintiff that he needed to go to the emergency room.  Plaintiff claims that because he was not taken to the emergency room immediately, the possibility of improving the final outcome, or permanency of the injury, was lost.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56© provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

**DISCUSSION**

In his complaint, Plaintiff claims that Defendant's failure to immediately transport Plaintiff to the hospital after he sustained his injury amounted to deliberate indifference of Plaintiff's serious medical needs in violation

of the Eighth Amendment to the United States Constitution. Plaintiff also claims that Defendant's actions amounted to a violation of the Due Process Clause of the Fourteenth Amendment. Defendant asserts that he is entitled to summary judgment on both of Plaintiff's claims.

I. **Plaintiff's Due Process Claim**

Plaintiff claims that Defendant's alleged deliberate indifference to his serious medical needs amounted to a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Although a jailer's deliberate indifference to an inmate's serious medical needs has been held to violate both the Eighth Amendment and the Due Process Clause, when the alleged conduct occurs after conviction, the violation is properly analyzed under the Eighth Amendment rather than the Due Process Clause. See Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985).

Because the conditions about which Plaintiff complains in this case occurred after he was convicted, the Court must evaluate his claim under the Eighth Amendment only. Id. However, because the legal standard under the Due Process Clause is the same as that which applies to convicted persons

under the Eighth Amendment, the analysis is the same regardless. Id. at 1574.

## II. **Plaintiff's Eighth Amendment Claim**

First, Defendant is entitled to summary judgment insofar as Plaintiff seeks to hold him liable in his official capacity for monetary damages under § 1983. It is well-established that "neither a State nor its official acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Policy, 491 U.S. 58, 71 (1989).

Defendant also asserts that he is entitled to summary judgment in his individual capacity because his actions did not amount to a violation of the Eighth Amendment. As is the case with many deliberate indifference claims, Plaintiff's claim in this case can be interpreted in more than one way. First, Plaintiff seems to allege that he did not receive the care that a wound of the nature he sustained calls for. Second, Plaintiff alleges that Defendant delayed medical treatment for his wound, and that this delay resulted in a loss of the possibility of improving the final outcome. Regardless of how Plaintiff's claim is classified, however, Defendant is entitled to summary judgment.

It is well-established that, when dealing with an Eighth Amendment deliberate indifference claim, a constitutional violation is present only where the medical treatment received was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.'" Carroll v. Correctional Medical Services 160 Fed. App'x 848, 850 (11th Cir. 2005)(quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). Further, an inmate's desire for a different mode of treatment does not amount to deliberate indifference. Hamm, 774 F.2d at 1575. Also, "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). If, however, the treatment that an inmate receives is "so cursory as to amount to no treatment at all," a constitutional violation may be found. Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000).

Plaintiff in this case acknowledges that he did receive medical care, but disagrees with the type of treatment provided. Specifically, Plaintiff asserts that he should have been immediately transported to the hospital for treatment by

an emergency room physician. Given the nature of the treatment that Plaintiff did receive at WSP, it would be impossible to say that the treatment provided to Plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" or that it was "so cursory as to amount to no treatment at all." As discussed above, the uncontroverted evidence shows that, not only was Plaintiff's injury treated within fifteen minutes of his arrival back at WSP on the date of the injury, but it was treated no less than thirteen times by WSP medical staff between the date the injury was sustained and the date Plaintiff was released from custody less than two months later.

Even if Plaintiff could somehow show that Defendant was negligent in providing Plaintiff with medical care (which would be exceedingly difficult to do in light of the fact that Defendant did not personally treat Plaintiff for his injuries, and that Plaintiff received the exact same treatment for his wound from the emergency room staff when he eventually was transported to the hospital as he did in the WSP infirmary), Defendant would still be entitled to summary judgment because, as discussed above, mere incidents of negligence or

malpractice do not rise to the level of constitutional violations. Carroll, 160 Fed. App'x at 850.

Next, Plaintiff claims that Defendant delayed his medical treatment by repeatedly failing to transport him to the hospital and that this delay resulted "in a loss of the possibility of improving the final outcome." First, it would be a stretch to say that the treatment of Plaintiff's injury was delayed. The uncontroverted evidence shows that Plaintiff was transported from the Sheriff's office where the injury occurred to WSP for medical treatment within five minutes of informing Deputy Poppell of his injury. Further, Plaintiff admits that he was seen by Nurse Thurman in the WSP infirmary within fifteen minutes of arriving at WSP. In fact, Plaintiff admits that Defendant informed other prison staff that a trustee was in route to the prison and needed to be taken to the infirmary as quickly as possible. Plaintiff also admits that he was allowed to bypass normal prison protocol which called for strip searches of returning trustees so that he could be taken to the infirmary faster. Although Plaintiff claims that Defendant refused to transport him to the hospital despite Plaintiff's repeated requests, this allegation, if true, goes more towards Plaintiff's disagreement with the

manner of treatment, rather than the alleged delay in treating his wound.

Further, even if Plaintiff could show that Defendant delayed transporting him to the hospital, Defendant would still be entitled to summary judgment. This is because the Eleventh Circuit Court of Appeals has held that when an inmate's claim is premised on a delay of treatment, a constitutional violation occurs only where "it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified." Taylor, 221 F.3d at 1259-60. Further, "[a]n inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed." Carroll, 160 Fed. App'x at 850 (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002)).

In this case, Plaintiff has failed to show that it was apparent to Defendant that a delay in transporting him to the hospital would detrimentally exacerbate his injury. Plaintiff

-16-

has also failed to present any evidence to show that such delay did, in fact, seriously exacerbate his injury. Indeed, it would be exceedingly hard for Plaintiff to make such a showing in this case considering the fact that Plaintiff admits that when he eventually was transported to the emergency room later that evening, the treatment provided by hospital personnel was exactly the same as the treatment provided to him by WSP medical staff immediately after his injury.

Plaintiff points to the affidavit of Dr. William A. Hitt as verifying medical evidence establishing the detrimental effect of the delay. Dr. Hitt's affidavit simply fails to establish this. Specifically, Dr. Hitt, in his affidavit, states that "[w]hile it is impossible to say whether [the failure of] immediate transportation to an emergency room resulted in an increased permanent disability and/or scarring in this case, the failure to so transport prevented the possibility of improving the final outcome." See William Hitt Aff., Doc. No. 46. Not only is this statement puzzling in that the first part of the statement partially contradicts the second part, but it also simply does not amount to evidence that the delay in transporting Plaintiff to the hospital had

a detrimental effect. Dr. Hitt expressly states that it is "impossible" to determine whether the delay in transporting Plaintiff to the emergency room resulted in any exacerbation of Plaintiff's injury. However, this is exactly what Plaintiff <u>must</u> show in order to defeat Defendant's motion for summary judgment.

    Finally, Dr. Hitt states in his affidavit:

> It is my medical opinion that if the victim, William H. Hudgens, had a third-degree, sulfuric acid chemical burn that covered the back of his hand and more than 3 inches in diameter, that the area should have been thoroughly flushed with cool running water and immediately taken to a medical facility for examination and treatment.

Hitt Aff. at 2. Plaintiff in this case has admitted that this is exactly what was done--that he was immediately transported back to WSP, where he was allowed to bypass normal security procedures and was immediately brought to the prison's infirmary, at which time his wound was flushed with water for fifteen minutes and treated. In light of these admissions by Plaintiff, Dr. Hitt's affidavit does not provide evidence for a jury to consider.

    Because Plaintiff has failed to show evidence that the treatment he was provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

-18-

intolerable to fundamental fairness," or that any delay in such treatment "seriously exacerbate[d]" his injury, Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim.[4]

**CONCLUSION**

For the above reasons and for the independent reason that Plaintiff failed to object to the Report and Recommendations of the Magistrate, the Magistrate Judge's Report and Recommendation is **AFFIRMED**. Doc. No. 66. Defendant's motion for summary is **GRANTED**. Doc. No. 26.

**SO ORDERED** this ___31st___ day of March, 2009.

_____
Judge, United States District Court
Southern District of Georgia

---

[4] Because Defendant is entitled to summary judgment on the merits of Plaintiff's claim, it is not necessary to discuss Defendant's assertion that he is entitled to qualified immunity.